UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LEBRONZE LENOIR,

        Plaintiff,

v.                                                                    Case No. 2:16-cv-69
                                                                     HON.  ROBERT HOLMES BELL

MICHAEL P. MILLETTE, et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by state prisoner LeBronze Lenoir pursuant to 42 U.S.C. § 1983.  Plaintiff filed this complaint against Michael P. Millette, Dr. Michael L. Brostoski, Wendy L. Bell, Amy L. MacDowell, Danya L. Fisher, Tiffany Haske, Maria Bennett, Barbara Kronk, Unknown Doolittle, and Dr. Roger Gerlach.  Defendants filed motions for summary judgment (ECF No. 19, 22, 34, and 40) on the ground that Plaintiff failed to exhaust his available administrative remedies.  Plaintiff responded (ECF No. 26 and 27).  Defendant Millette filed a reply to Plaintiff's response (ECF No. 30).  Plaintiff filed a motion for summary judgment (ECF No. 37).  Defendant Gerlach and Defendant Millette filed a motion to stay their obligation to file a response to Plaintiff's motion for summary judgment (ECF No. 40).  Defendants Ball, MacDowell, Doolittle, Fisher, Haske, Bennett, and Kronk joined Defendants Gerlach and Defendant Millette in seeking a stay of their obligation to respond to Plaintiff's summary judgment motion (ECF No. 44).

Plaintiff alleges that as a teenager he was exposed to Tuberculosis and could not receive a skin injection vaccination.  Instead, Plaintiff needed a chest x-ray.  Plaintiff informed the

MDOC of this fact when he was initially incarcerated.  Plaintiff alleges that he was given a chest x-ray on November 26, 2012, which was negative.  Plaintiff claims that this was later proven to be falsified leading to imminent danger.  Plaintiff states that he was placed on the medication INH for six months, but did not finish the six month term.  Plaintiff did not receive follow-up medical care.

On July 26, 2013, Defendant R.N. Wendy Ball attempted to inject Plaintiff with a Tuberculosis vaccine.  Plaintiff informed R.N. Ball that he needed a chest x-ray instead, due to his past reaction to the vaccine.  On August 2, 2013, Plaintiff was called to health care and evaluated by Defendant R.N Amy MacDowell.  Plaintiff informed R.N. MacDowell that he needed a chest x-ray and that he could not receive a skin vaccination.  Plaintiff complains that he never received any treatment.

After Plaintiff was denied treatment, he began experiencing severe upper back and neck pain.  Plaintiff requested health care on September 30, 2013, and was seen by Defendant R.N. Danya L. Fisher a few days later.   Defendant Fisher informed Plaintiff that all she could do for his pain was to give him Tylenol.  Plaintiff requested an x-ray, but was told to take Tylenol.  Each time Plaintiff visited health care he was charged a $5.00 co-pay.

Plaintiff spoke with Defendant R.N. Tiffany Haske on October 9, 2013, and informed her of his back pain, and his difficulty sleeping and walking to the toilet just 4 feet away.  Plaintiff requested a "wheel chair detail," which was denied.   Plaintiff states that Ibuprofen was not effective and that he obviously needed an x-ray due to the swelling and inflammation.  Plaintiff was called to health care on October 25, 2013, and spoke with Defendant R.N. Maria Bennett.  Plaintiff told Defendant Bennett about his pain, and sickness including swollen throat, spitting blood, headaches, and vomiting.  Plaintiff was placed on a clear liquid detail, and was given

Tylenol and salt to gargle.  Plaintiff alleges that he was told that he would be scheduled to see a doctor.

On November 13, 2013, Defendant MacDowell told Plaintiff that "she was tired of LENOIR complaining about his back, and she's not going to put LENOIR down to see the doctor or down for x-rays, because if he was in the world, he would not be able to afford . . . all the visits he (LENOIR) have taken to Health Care" After telling Plaintiff that "all inmates are liars," she charged him $5.00 for the health care visit.  Plaintiff asserts that he paid $5.00 simply to listen to her insults and received no treatment.   Plaintiff saw Defendant MacDowell on November 23, 2013.  After touching and rubbing Plaintiff's back and neck, she gave Plaintiff Motrin.  Plaintiff was again charged $5.00.

Plaintiff visited health care on November 27, 2013, and was seen by Defendant Michael Millette.  Plaintiff complained to Defendant Millette about the $5.00 co-pay, which required him to sacrifice commissary for health care.  When Plaintiff told Defendant Millette that he knew that there was something wrong with his back, Defendant Millette responded by stating: "But the State do not want to spend the money."   Defendant Millette wrote in the report:

> He is requesting an x-ray for ongoing pain because "I know something is wrong with my back."  His subjective complaints do not match his objective findings.  There is no medical necessity for an x-ray.  He was able to walk into the room with an easy stride, but upon dismissal from the visit walks slumped over groaning and moaning historically *(sic)*.

ECF No. 1, PageID.6.  Plaintiff transferred to Marquette Branch Prison on December 4, 2013. Plaintiff received pain medication from nurses, but transferred again before testing could be done. On February 1, 2014, Plaintiff was transferred to the Genesee County Sheriff's Department on a writ.  On February 15, 2014, Plaintiff informed the Genesee County medical staff of his pain and sickness.  Plaintiff received a chest x-ray which showed a large mass and abscesses.  It was

determined that Plaintiff suffered with untreated Tuberculosis, which caused a serious spinal injury.

Plaintiff was provided a series of surgical procedures necessary to save his life. Plaintiff suffers from pain and back stiffness due to the lack of early treatment.  Plaintiff was charged $116,000.00 for the treatment that he received while in Genessee County.  Plaintiff complains that it was the cost of treatment that caused Defendants to deny him necessary medical care.  On March 3, 2014, Plaintiff was transferred to Duane Water Hospital for "pain management," which Plaintiff was told would last the rest of his life.   On April 7, 2014, Plaintiff was transferred to Ionia Correctional Facility and placed in the general population.  Plaintiff complained that he could not make it to the toilet or shower without handicap rails.  This forced Plaintiff to urinate and defecate on himself.  Plaintiff was forced to live with the odor of his own bodily waste and was threatened by other prisoners due to the foul smell.

Plaintiff was assaulted by another prisoner sustaining a cut lip and swollen eye. Plaintiff was told by Defendant R.N. Barbara Kronk to pour water around his cell to decrease the odor and that other prisoners with back problems can keep their cells clean.  Plaintiff complained that he broke his finger during the assault.  Defendant Kronk dismissed Plaintiff's claim stating that if his back hurts as bad as he says, then he wouldn't feel the pain in his finger.  On February 16, 2015, Plaintiff was seen by Defendant R.N. Doolittle during nursing rounds in administrative segregation.  Defendant Doolittle balled-up Plaintiff's medical kites and stated that Plaintiff was being transferred.  Medical staff, including Defendant Dr. Roger A. Gerlach, took Plaintiff's back brace in retaliation for Plaintiff's medical kites.  Plaintiff alleges that Defendant Dr. Gerlach stated that the back brace was taken because of Plaintiff's "bad behavior" of writing medical kites for over three weeks.

4

Plaintiff asserts that he exhausted many grievances on these issues, however some of his grievances were not processed and some were rejected as duplicative. Defendants argue that Plaintiff never properly exhausted any grievance on the issues asserted in the complaint against any of the named Defendants. Defendants argue that the complaint should be dismissed due to Plaintiff's failure to exhaust his grievance remedies.

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-216 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with

the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural

rules. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S.Ct. 1850, 1859-1860 (2016).

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original).[1] The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V.

---

[1] In *Holoway v. McClaren*, No. 15-2184 (6th Cir., April 7, 2016) (unpublished), the Sixth Circuit concluded that where a plaintiff fails to name each defendant in his grievance, the un-named defendants may not be dismissed for failure to exhaust grievance remedies if the MDOC did not reject the grievance under the policy requiring a grievant to name each individual involved. The Sixth Circuit stated: "Because MDOC officials addressed the merits of Holloway's grievance at

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, BB. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ DD. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ T, FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ T, FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved . . . ." *Id.* at ¶ S.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to PD 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ V of PD 03.02.130. *Id.* at ¶Q. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will

---

each step and did not enforce any procedural requirements, Holloway's failure to identify the defendants named in this lawsuit and to specify any wrongdoing by them in his grievances cannot provide the basis for dismissal of his complaint for lack of exhaustion." *Id.* at 3. The Sixth Circuit failed to provide any guidance as to how the MDOC might determine who the plaintiff intended to name in a future federal lawsuit at the time the plaintiff filed his Step I grievance.

be investigated in accordance with PD 01.01.140. The prisoner will be promptly notified that an extension of time is needed to investigate the grievance. *Id.*

Plaintiff exhausted three grievances through Step III of the grievance process. All three grievances were rejected as duplicative or for being untimely. In grievance ICF-15-02-0468-28a, Plaintiff asserted at Step I that Dr. Gerlach, on February 23, 2015, told Corrections Officer Barns that Plaintiff no longer needed his back brace. Plaintiff complained that the back brace was taken from him in violation of his right to treatment of his serious medical needs. The grievance was rejected as duplicative to issues raised in a previous grievance. Plaintiff complained at Step II and at Step III that this was the first grievance that he submitted on this issue. The rejection was upheld at each step. PageID.227-231.

In grievance ICF-15-02-0454-28a Plaintiff alleged that he was being denied pain medication between February 6, 2015, and February 22, 2015. Plaintiff asserted that he spoke with R.N. Kronk and R.N. Doolittle but the issue was not resolved. Plaintiff's grievance was rejected at Step I because the issues raised were duplicative of issues raised in another grievance filed by Plaintiff. At Step II, Plaintiff complained that his prior grievance was not answered in a timely manner and that he was not given a Step II grievance form for the previous grievance when he had requested it. The rejection was upheld at Step II and Step III. PageID.232-236.

Grievance URF-14-12-3931-28a was rejected as duplicative to grievance URF-14-06-1741-28E. Plaintiff asserted on December 15, 2014, at Step I, that he made numerous health care requests between September and November of 2013. Plaintiff spoke to a number of individuals including Defendants Millette, Ball, MacDowell, Fischer, Haske, and Bennett. PageID.273. At Step II, Plaintiff stated that he did not include the names of each individual in his first grievance so he submitted a second grievance on the issue in an attempt to exhaust his

administrative grievance remedies. PageID.238. The grievance was rejected at Step II as being untimely. PageID.239. The rejection was upheld at Step III. PageID.237.

Plaintiff relies upon grievance URF-14-12-3931-28a as exhausting his claims that he was denied medical care by the Defendants. However, as stated, that grievance was rejected at Step I as duplicative and rejected at Step II as untimely. The grievance cannot be considered properly filed for purposes of exhausting administrative grievance remedies. Plaintiff makes a claim that he submitted numerous grievances without receiving a response. Plaintiff has not submitted any copies of these grievances to show that the MDOC failed to respond to a properly filed grievance. Plaintiff argues that his failure to exhaust was an innocent mistake and that he should receive another opportunity to exhaust his claims. As to grievance URF-14-12-3931-28a, Plaintiff admits that it was a duplicative grievance, but asserts that he was only trying to exhaust the names of the individuals that he failed to include in his original grievance. However, even if the Court excuses the duplicative nature of the grievance, the grievance was rejected at Step II as untimely. In the opinion of the undersigned, because Plaintiff failed to properly submit any grievances through Step III of the grievance process, Plaintiff failed to exhaust his grievance remedies on the issues asserted in his complaint.

For the foregoing reasons, I recommend that Defendants' motions for summary judgment ((ECF No. 19, 22, 34, and 40) be granted dismissing the complaint without prejudice for the failure to exhaust administrative grievance remedies. It is further recommended that Plaintiff's motion for summary judgment (ECF No. 37) and Defendants motions to stay the obligation to respond to Plaintiff's summary judgment motion (ECF No. 42 and 44) be denied as moot.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28

U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal.  Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $505 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $505 appellate filing fee in one lump sum.


Dated:  _____October 24, 2016_____                    _____*/s/ Timothy P. Greeley*_____
                                                        TIMOTHY P. GREELEY
                                                        UNITED STATES MAGISTRATE JUDGE


## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).